UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

OPELOUSAS HOTEL GROUP L L C                 CASE NO.  6:18-CV-01311

VERSUS                                      JUDGE TERRY A. DOUGHTY

D D G CONSTRUCTION INC.                     MAGISTRATE JUDGE CAROL B.
                                            WHITEHURST

MEMORANDUM RULING

Pending before the Court are a Motion for Summary Judgment on the Crossclaim Against Admiral Insurance Company [Doc. No. 237] filed by First Mercury Insurance Company ("First Mercury") and a Motion for Summary Judgment [Doc. No. 240] filed by Admiral Insurance Company ("Admiral"). DDG Construction, Inc. ("DDG") filed a response [Doc. No. 242] in support of First Mercury's Motion for Summary Judgment, and Admiral filed a response in opposition [Doc. No. 254]. First Mercury, DDG, and Plaintiff Opelousas Hotel Group, LLC ("OHG") filed responses in opposition [Doc. Nos. 244, 246, and 250] to Admiral's Motion for Summary Judgment, and Admiral filed replies [Doc. Nos. 259, 261, and 263].

For the following reasons, First Mercury's Motion for Summary Judgment [Doc. No. 237] is **GRANTED**. Admiral's Motion for Summary Judgment [Doc. No. 240] is **DENIED**.

I.      BACKGROUND

On December 5, 2018, OHG filed its Original Complaint for Damages.[1] OHG subsequently filed several amended complaints.[2] In its Fourth Amended Complaint ("Complaint"), OHG asserted causes of action for breach of contract, negligence, breach of implied warranty of

---

[1] [Doc. No. 1]
[2] [Doc. Nos. 51, 62, 93, 132]

workmanship, professional negligence, and redhibition against DDG, its insurers, and several subcontractors.[3] First Mercury filed a Crossclaim against Admiral claiming that it is entitled to reimbursement from Admiral for its pro rata share of attorneys' fees and costs that First Mercury has paid to defend DDG.[4] OHG settled its claims against DDG, Admiral, and First Mercury.[5] The only remaining claim in the suit is First Mercury's Crossclaim against Admiral.

The events leading up to the suit are as follows. On August 12, 2014, OHG entered into a written contract ("Construction Contract") with DDG.[6] Under the Construction Contract, DDG agreed to construct as the "prime, general contractor," a Hampton Inn in Opelousas, Louisiana ("the Project") for the original sum of $4,668,330.00.[7] Under the Construction Contract, DDG would construct the entire hotel. DDG does not employ laborers and did not provide any laborers for the Project.[8] Rather, DDG's role was to hire and manage subcontractors who would be tasked with the actual construction of the hotel.[9] The Construction Contract also provided that it was governed by Louisiana law.[10]

According to OHG, on June 1, 2017, DDG was issued a written notice of default due to DDG's "lack of progress and finishing the hotel on time, [and] lack of manpower."[11] The written notice of default allegedly gave DDG seven days to remedy the default.[12] OHG further alleged that after the expiration of the seven days, OHG terminated the Construction Contract.[13]

---

[3] [Doc. No. 132, pp. 6–9]
[4] [Doc. No. 205]
[5] [Doc. No. 278] (Minutes of Settlement Conference)
[6] [Doc. No. 132, p. 9]
[7] [Doc. No. 236-5]
[8] [Doc. No. 236-6, p. 24]
[9] [Id.]
[10] [Doc. No. 236-5]
[11] [Doc. No. 236-7, p. 67]
[12] [Doc. No. 132, pp. 3–4]
[13] [Doc. No. 132, p. 4]

First Mercury issued various commercial general liability policies[14] ("CGL") to DDG and accepted DDG's defense of the lawsuit subject to a reservation of rights.[15] This Court previously held that First Mercury did not have a duty to indemnify DDG.[16] Admiral issued various CGLs to DDG and denied its duty to defend DDG.[17]

Admiral issued the following CGLs (collectively, the "Policies") to DDG: Commercial Lines Policy No. CA000027825-017 to DDG for the period July 27, 2017, to July 27, 2018, and three renewal policies to DDG for the periods July 27, 2018, to July 27, 2019; July 27, 2019, to July 27, 2020; and July 27, 2020, to July 27, 2021. Admiral also issued excess Policy No. GX000000667-0113, for the period July 27, 2017, to July 27, 2018. The Policy was renewed by Policy No. GX000000667-0214, for the period July 27, 2018, to July 27, 2019, and then renewed away by Policy No. GX000000667-03, for the period July 27, 2019, to July 27, 2020.[18]

Admiral contends that the Policies provide neither coverage nor defense of DDG because the damages did not occur during the Policies' periods. In support of this argument, Admiral contends that all damages occurred before the Policies took effect because DDG stopped working on the project no later than June 8, 2017, forty-nine days before the first Policy took effect. In the alternative, Admiral argues that several exclusions contained within the Policies negate its duty to defend and indemnify DDG.[19] First Mercury argues that Admiral had a duty to defend because the damages manifested after the Policies were in effect and because the Complaint is broadly drafted to include allegations beyond the scope of the Policies' exclusions.[20]

The issues are briefed, and the Court is prepared to rule.

---

[14] *See* [Doc. No. 237-2, ¶ 4]
[15] [Doc. No. 208-1]
[16] *See* [Doc. No. 265]
[17] *See* [Doc. Nos. 237-2, ¶ 5; 240-2, ¶¶ 7-10]
[18] *See* [Doc. Nos. 240-5, 240-6, 240-7, 240-8]
[19] [Doc. No. 240-1, pp. 13-15]
[20] [Doc. No. 237-1, p. 15]

## II.      LAW AND ANALYSIS

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-

serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial." *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B. Analysis

Admiral contends that First Mercury's Crossclaim should be dismissed for two chief reasons: (1) the Policies were not in effect because all of the work performed by DDG, which formed the basis of liability, occurred prior to the inception date of the Policies, and 2) the Policies contain exclusions barring any hypothetical recovery from Admiral as DDG's insurer. With respect to Admiral's first argument, First Mercury responds that damages caused by DDG's faulty work could have occurred during the policy periods because the Complaint alleges that they first became evident when the replacement contractors took over the Project. With respect to Admiral's second argument, First Mercury responds that the Complaint is broadly drafted to include allegations beyond the scope of the Policies' exclusions.

The parties do not dispute that the interpretation of the Policies is controlled by Louisiana law. The Court agrees and finds that Louisiana law applies to interpretation of the policies. *See Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (Federal courts sitting

in diversity apply the choice-of-law rules of the forum state.); *see also Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So. 2d 773 (In cases involving contractual interpretation of an insurance policy, Louisiana courts employ the law of the state whose policies would be most seriously impacted if its law was not applied.); *see also* La. C.C. Art. 3537.

### 1.  Insurance Contract Interpretation

An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Louisiana Civil Code. *See e.g. Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580; *Carbon v. Allstate Ins. Co.*, 97 3085, p. 4 (La.10/20/98); *Carbon v. Allstate Ins. Co.*, 97-3085 (La. 10/20/98), 719 So. 2d 437, 439. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code Art. 2046. If the parties' intent can be "construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *See Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07); 956 So. 2d 583, 590; *Cadwallader*, 848 So. 2d at 580; *see also Edwards v. Daugherty*, 2003-2103 (La. 10/1/04); 883 So. 2d 932, 941 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.").

Under Louisiana law, an insurer's duty to defend an insured is a separate and distinct inquiry from the insurer's duty to indemnify the insured in the underlying liability case. *Arceneaux v. Amstar Corp.*, 2015-0588 (La. 9/7/16), 200 So. 3d 277, 281 (*citing Elliott v. Cont'l Cas. Co.*, 2006-1505 (La. 2/22/07), 949 So. 2d 1247, 1250). In determining whether an insurance contract creates a duty to defend, Louisiana courts apply the "Eight Corners Rule." *See Pontchartrain Nat.*

*Gas Sys. v. Texas Brine Co., LLC*, 2018-0244 (La. App. 1 Cir. 10/11/18), 264 So. 3d 545, 552–

53, *writ denied*, 2019-0080 (La. 3/6/19), 264 So. 3d 1204, (*citing Maldonado v. Kiewit La. Co.*,

2013-0756 (La. App. 1 Cir. 3/24/14), 146 So. 3d 210, 218)). The eight-corners rule compares the

plaintiff's pleadings to the policy without considering extrinsic evidence. *Id.* A duty to defend is

created unless the policy unambiguously excludes coverage as applied to the allegations in the

pleadings. *Arceneaux*, 200 So.3d at 281–82 (*citing Steptore v. Masco Constr. Co.*, 93-2064 (La.

8/18/94), 643 So. 2d 1213, 1218)); *Elliott*, 949 So. 2d at 1250. In applying the eight-corners rule,

the factual allegations of the petition "must be liberally interpreted to determine if they set forth

grounds that raise the possibility of coverage under the policy." *Louisiana Dep't of Env't Quality

v. Tidewater Landfill LLC*, 2020-0334 (La. App. 4 Cir. 3/24/21), *writ denied,* 2021-00703 (La.

9/27/21), 324 So. 3d 90. If the pleadings against the insured disclose even a possibility of liability

under the policy, the insurer has a duty to defend the insured. *Arceneaux*, 200 So. 3d at 282 (*citing

Steptore*, 643 So. 2d at 1218); *Elliott*, 949 So. 2d at 1250; and *Meloy v. Conoco, Inc.*, 504 So. 2d

833, 839 (La. 1987)).

Unlike the duty to defend, an insurer's duty to indemnify depends on the facts established

in the lawsuit. *Hanover Ins. Co. v. Superior Lab. Servs., Inc.,* No. 11-2375, 2016 WL 7156067, at

*2 (E.D. La. Dec. 8, 2016) ("The duty to indemnify is 'triggered by actual facts that establish

liability in the underlying lawsuit.'"); *see also Admiral Ins. Co. v. Dual Trucking, Inc.*, No. CV

20-383, 2020 WL 2526952, at *8 (E.D. La. May 18, 2020). When uncontroverted facts preclude

the possibility of a duty to indemnify, "the duty to defend ceases and the duty to indemnify is

negated." *Donahue v. Republic Nat'l Distrib. Co.*, 489 F.Supp.3d 455, 470 (E.D. La. 2020). DDG

and OHG have settled claims for indemnity against Admiral, and First Mercury does not argue

that Admiral has a duty to indemnify DDG. Therefore, the Court will not address whether Admiral

violated a duty to indemnify.

### a.  The Admiral Policies

The Policies contain an Insuring Agreement which states:

**1. Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

**b.**  This insurance applies to "bodily injury" and "property damage" only if:

> **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and
>
> **(3)**  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any

continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.[21]

Admiral argues the following exclusions negate its duty to defend: Pre-existing Damage Exclusions,[22] Damage to Property Exclusions,[23] Damage to Your Product Exclusions,[24] and Damage to Impaired Property or Property Not Physically Injured Exclusions[25].

The Court will address each of the exclusions below. Ultimately, the Court finds that Admiral violated its duty to accept the defense of DDG because the Complaint discloses the possibility of coverage.

### i.     Pre-existing Damage Exclusions

The Policies contain Pre-Existing Damage Exclusions which state:

This insurance does not apply to:

**1.** Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

---

[21] [Doc. Nos. 240-5, p. 8; 240-6, p. 9; 240-7, p. 9; 240-8, p. 9]

[22] *See* [Doc. Nos. 240-5, p. 60; 240-6, p. 61; 240-7, p. 61; 240-8, p. 62]

[23] *See* [Doc. Nos. 240-5, pp. 11-12; 240-6, pp. 12-13; 240-7, pp. 12-13; 240-8, pp 12-13]

[24] *See* [Doc. Nos. 240-5, p. 12; 240-6, p. 13; 240-7, p. 13; 240-8, p. 13]

[25] *See* [Id.]

**(a)** which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

**(b)** which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period.

**2.** Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.[26]

Under the Policies, "Property Damage" is defined as:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically Injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[27]

Under the Policies, "Occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions."[28]

Louisiana courts generally apply the manifestation theory of damages to determine when property damage takes place for purposes of triggering coverage for construction defects. *See Mann v. Tim Clark Constr.*, LLC, 2018-0961 (La. App. 4 Cir. 5/22/19), 273 So. 3d 397, 402–03,

---

[26] *Supra* note 22.
[27] [Doc. Nos. 240-5, p 22; 240-6, p. 23; 240-7, p. 23; 240-8, p. 23]
[28] [Doc. Nos. 240-5, p 21; 240-6, p. 22; 240-7, p. 22; 240-8, p. 22]

*writ denied*, 2019-01019 (La.10/1/19), 280 So. 3d 158; *Rando v. Top Notch Props., L.L.C.*, 2003-1800 (La. App. 4 Cir. 6/2/04), 879 So. 2d 821, 833. Under the manifestation theory, property damage "occurs" when it first becomes manifest, regardless of when the act that caused the damage occurred. *Mann*, 273 So. 3d at 402–03 (*citing Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/11), 79 So. 3d 246, 278 n.75); *M & R Drywall, Inc. v. MAPP Constr., LLC*, 2017-0186 (La. App. 1 Cir. 4/29/19), 280 So. 3d 260, 276, *writ denied sub nom. M&R Drywall, Inc. v. Mapp Constr., LLC*, 2019-01325 (La. 11/19/19), 282 So. 3d 1073, and *writ denied,* 2019-01403 (La. 11/19/19), 282 So. 3d 1073, and *writ denied,* 2019-01411 (La. 11/19/19), 282 So. 3d 1074.

All parties agree that the manifestation theory of trigger of coverage applies here. Accordingly, the Court finds that the manifestation theory of trigger of coverage applies.

First Mercury argues that the Complaint alleges the possibility that the damages manifested after the Policies took effect. In support, they cite to Paragraph 112 of the Complaint, which states that "[t]he defects in the work done by DDG became evident during the work performed by OHG's replacement general contractor."[29] Admiral argues that, simply because damage is considered to have occurred during the policy period, said damage is not necessarily covered under the policy because coverage is "determined by reading the policy terms and conditions as a whole."[30] In support of this argument, Admiral cites part (b) of the Pre-existing Damage Exclusions. That section provides that the Policies do not apply to damages "which are, or are alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any; whichever is earlier) even if the "bodily injury" or "property damage" continues during this policy period."

---

[29] [Doc. No. 132, p. 16]
[30] [Doc. Nos. 259, 261, 263] *citing LeBlanc v. Aysenne*, 2005-0297 (La. 1/19/06), 921 So. 2d 85, 91.

Admiral cites to *Mann v. Tim Clark Constr., LLC* to support its argument that the Pre-Existing Damage Exclusion negates its duty to defend. 2018-0961 (La. App. 4 Cir. 5/22/19), 273 So. 3d 397, *writ denied*, 2019-01019 (La.10/1/19), 280 So. 3d 158. In *Mann*, the court held that a pre-existing damage exclusion was clear, unambiguous, and provided no coverage for damages that first occurred or began to occur prior to the policy's inception date. *Id*. at 404. The court rejected the insured's argument that the court should apply the exposure theory of trigger of coverage and instead applied the manifestation theory. The court held that the insurer did not have a duty to defend the insured because the insured admitted in their pleadings that damages began to occur prior to the inception of the insured's policies. *Id*. at 404.

*Mann* is distinguishable from the instant case. In *Mann*, the insured acknowledged that the damages began to occur several years before the CGL policy took effect. *Id*. Here, the Complaint does not give a date upon which damages related to DDG's faulty work began to manifest. The Complaint states that DDG and OHG entered into the construction contract on August 12, 2014, that DDG provided OHG with written notice of default on June 1, 2017, and that OHG terminated the contract with DDG on June 8, 2017. The only hints as to when the damage began to manifest are located in the allegations of Paragraphs 17, 18, and 112 of the Complaint. Those paragraphs state:

> [OHG] was forced to hire a replacement general contractor to complete the Project[.]…The work performed by DDG on the Project was not done in a good and workmanlike manner and [OHG] incurred damages in having to correct DDG's deficient work…. The defects in the work done by DDG became evident during the work performed by [OHG's] replacement general contractor.[31]

Therefore, the instant case is distinguishable from *Mann* because the court in *Mann* relied on the date the damages began to manifest and determined that it pre-dated the CGL, whereas this Court

---

[31] [Doc. No. 132, pp. 4, 16]

has no such date to rely upon. In applying the eight-corners rule, the factual allegations of the petition must be liberally interpreted to determine if they set forth grounds that raise the possibility of coverage under the policy. *See Tidewater Landfill*, 2020-0334 La. App. 4 Cir. 3/24/21. Liberally construed, the Complaint discloses the possibility of coverage because it is possible that damages related to DDG's faulty work "became evident," i.e., manifested, after the Policies took effect.

Alternatively, to the extent Louisiana law allows the Court to review extrinsic evidence to broaden an insurer's duty to defend (as opposed to narrowing the duty), Sunny Desai ("Desai"), owner of the company who replaced DDG as general contractor, testified that his company took over the project on September 5, 2017.[32] As noted above, the Complaint alleges that defects in the work done by DDG "became evident" during the work performed by the replacement general contractor, i.e., sometime after Desai's company took over the Project in September of 2017. Admiral's Policies first began in July of 2017 and remained in effect well after September of 2017.[33] Therefore, Desai's testimony, if considered, clearly demonstrates that damages began to manifest while the Policies were in effect.

The United States Court of Appeals for the Fifth Circuit has held that that "when the petition does not contain sufficient facts to enable the court to determine if coverage exists, it is proper to look to extrinsic evidence in order to adequately address the issue." *W. Heritage Ins. Co. v. River Ent.*, 998 F.2d 311, 313 (5th Cir. 1993) (citations omitted). The court in *Western Heritage Ins. Co.* was applying Texas law, but some Louisiana courts have similarly taken a broad approach in applying the eight-corners rule. For example, the Louisiana Court of Appeals for the Fourth Circuit noted that courts may consider "pleadings," (as opposed to only the allegations in the petition) and that, pursuant to La. C.C.P. Art. 852, pleadings include "petitions, exceptions, written

---

[32] [Doc. No. 236-7, p. 6].
[33] *See supra* note 31.

13

motions, and answers." *Grimaldi Mech., L.L.C. v. The Gray Ins. Co.*, 2005-0695 (La. App. 4 Cir.

6/2/06), 933 So. 2d 887, *writ denied sub nom. Grimaldi Mech., L.L.C. v. Gray Ins. Co.*, 2006-2146

(La. 11/17/06), 942 So. 2d 536, *citing Bryant v. Motwani*, 96-1351 (La. App. 4 Cir. 10/30/96), 683

So. 2d 880). Therefore, to the extent that the Court can take notice of Sunny Desai's deposition,

the allegations of the Complaint clearly disclose the possibility of coverage.

In *IDC Const., LLC. v. Admiral Ins. Co.*, the United States District Court for the Southern

District of Florida examined an identical pre-existing damage exclusion[34] and whether it negated

the duty to defend. 339 F. Supp. 2d 1342 (S.D. Fla. 2004). In *IDC Const., LLC*, there was a CGL

with an effective date of October 1, 2001. *Id.* at 1344. The insured brought suit for damages

resulting from improperly constructed work performed in 1999 and 2000. *Id.* The insurer argued

that because all of the damage sprang from material breaches of the 1999 and 2000 contracts, none

of the property damage occurred during the policy period. *Id.* at 1350. The court rejected the

insurer's argument, stating:

> Here, at least to the extent that it does not specify the exact date
> when the damages first occurred, the Underlying Complaint alleges
> facts partially within and partially outside the coverage of the policy.
> Therefore, because the allegations of the Underlying Complaint
> implicate potential coverage, [the insurer] is required to defend [the
> insured] in the underlying suit.

---

[34] The exclusion stated:
> This insurance does not apply to: 1. Any damages arising out of or related to "bodily injury" or
> "property damage", whether such "bodily injury" or "property damage" is known or unknown,
> (a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy,
> if any, whichever is earlier); or
> (b) which are, or are alleged to be, in the process of occurring as of the inception date of the policy
> (or the retroactive date of this policy, if any, whichever is earlier) even if the "occurrence" *1345
> continues during this policy period.
> 2. Any damages arising out of or related to "bodily injury" or "property damage", whether known
> or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of
> this policy (or the retroactive date of this policy, if any, whichever is earlier).
> We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding
> alleging damages arising out of or related to "bodily injury" or "property damage" to which this
> endorsement applies.

*Id.* at 1344–45.

*Id.* (internal citations and quotation marks omitted).

Here, there are allegations partially within and partially outside the coverage policy. The Complaint alleges that "DDG failed to complete the Project by the agreed completion date[]" and that OHG was forced to hire a replacement general contractor to complete the Project "as a result of DDG's failure to perform its obligations to [OHG]."[35] This damage occurred outside the Policies' coverage period because it manifested on June 8, 2017, when DDG was terminated for cause as a result of its failure to complete the Project on time. Allegations that OHG experienced "costly delays and expenses to repair" DDG's work, however, implicate potential coverage because those damages could have manifested after the Policies first took effect on July 27, 2017. Accordingly, the Court finds that the Complaint discloses the possibility of coverage for damages relating to the cost to repair DDG's faulty work and any damages to other tangible property, and that the Pre-existing Damage Exclusions do not negate Admiral's duty to defend.

### ii.     Damage to Property and Damage to Your Work Exclusions

The Policies contain Damage to Property Exclusions which state:

This insurance does not apply to: …

**j. Damage To Property**

"Property damage" to: …

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.[36]

---

[35] [Doc. No. 132, p. 3, 4]
[36] *See supra* note 23.

The Policies also contain Damage to Your Product Exclusions which state:

> This insurance does not apply to:…
>
> **k. Damage to Your Product**
>
> "Property damage" to "your product" arising out of it or any part of it.[37]

The Policies define "Your Work" as follows:

> **22.** "Your work":
>
>     **a.** Means:
>
>         **(1)** Work or operations performed by you or on your behalf; and
>
>         **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>
>     **b.** Includes:
>
>         **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
>         **(2)** The providing of or failure to provide warnings or Instructions.[38]

Admiral asserts that exclusions (j)(5) and (j)(6) of the Damage to Property Exclusion are intended to limit coverage for defective work performed by the insured. First Mercury concedes that the Damage to Property Exclusion "could potentially apply to work performed and/or products created by DDG," but asserts that the Damage to Property Exclusion "does not apply where there is physical damage to property other than the insured's work product after the product has been put to its intended use."[39] First Mercury further argues that the allegations in the Complaint are "sufficiently broad to encompass property damage other than property worked on by DDG and/or

---

[37] *See supra* note 24.

[38] [Doc. Nos. 240-5, p. 23; 240-6, p. 24; 240-7, p. 24; 240-8, p. 24]

[39] [Doc. No. 237, p. 19] *citing Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*, CIV.A. 10-1682, 2012 WL 1198611, at *9 (E.D. La. Apr. 10, 2012).

products constructed by DDG and thus are not susceptible to [the Damage to Property or Damage to Your Product Exclusions]."[40]

In *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 2006-1827 (La. 5/22/07), 958 So. 2d 634, 641, the Louisiana Supreme Court held that a CGL containing the "work product" exclusion "does not insure any obligation of the policy holder to repair or replace his own defective product." The court also noted that a CGL policy "is not written to guarantee the quality of the insured's work or product." *Id.* (quoting *McMath Const. Co. v. Dupuy*, 2003-1413 (La. App. 1 Cir. 11/17/04), 897 So. 2d 677, *writ denied*, 2004-3085 (La. 2/18/05), 896 So. 2d 40).

Here, the Damage to Property and Damage to Your Product Exclusions unambiguously preclude coverage for any damage arising out of DDG's defective work that did not result in damage to other property, i.e., property that DDG did not construct. Subsection j(5) applies to the property in question because OHG alleged that subcontractors hired by DDG performed defective work. Similarly, subsection j(6) also applies. OHG hired replacement contractors and subcontractors to finish and repair DDG's allegedly deficient work. There is also no question that DDG's work qualifies as "Your Work" under the Policies. DDG hired various subcontractors to complete the construction of the hotel. Therefore, the work to construct the hotel qualifies as work or operation performed "on your (DDG's) behalf."

First Mercury cites to *Starr Surplus Lines Ins. Co. v. Banner Prop. Mgmt. Co.* to support its argument that the Complaint is broadly drafted to include damage to property other than the Project. No. CV 18-5635, 2018 WL 6448840 (E.D. La. Dec. 10, 2018). In *Banner Property*, a plaintiff alleged seventy-eight defects in his residential home were caused by the insured's negligent work. *Id.* at 7–8. The insurer denied a duty to defend, contending that "Damage to

---

[40] [Id. at 20] *referencing Starr Surplus Lines Ins. Co. v. Banner Prop. Mgmt. Co.* CV 18-5635, 2018 WL 6448840, at *7–8 (E.D. La. Dec. 10, 2018).

Property," "Damage to Your Product," and "Damage to Your Work" exclusions unambiguously excluded coverage. *Id.* at 6–7. The insurer claimed all seventy-eight separate physical defects and damages "indisputably stem[med] from, and affect, [the plaintiff's] home," and the insured and its subcontractors constructed the home "such that the entire home is [the insured's] 'product.'" *Id.* at 7.

The insured argued that the duty to defend was triggered because some of the property damage allegations fell within the policy's exclusions. *Id.* at 8. The insured conceded that, to the extent the plaintiff alleged faulty work, there is not coverage under its policy for the cost of repair or replacement but noted the Louisiana Supreme Court recognized that CGLs provide coverage for property damage that arises out of faulty work. *Id.* (*citing Supreme Servs. & Specialty Co.*, 958 So. 2d at 341). The insured argued that allegations of water leaking causing damage to cabinets and flooring of the rear bathroom were distinct property damage resulting from faulty work. *Id.*

The court agreed with the insured and found that the insurer did not carry its burden of proving that coverage was unambiguously excluded for all of the plaintiff's asserted claims. *Id.* The court rejected the contention that, where the insured is the general contractor of a home, any damage to the entire home necessarily falls within the "your work" and/or "your product" exclusions. *Id.* The court also noted express allegations of distinct property damage separate and apart from the work itself and that not all of the damage required the repair or replacement of a contractor's faulty product or work. *Id.* Specifically, the complaint in *Banner Property* identified damage to other property such as "[d]iscoloration and damage to the master bathroom sink as a result of water leakage" and "[d]amage to cabinets and flooring of the rear bathroom due to water leakage[.]" *Id.* at 2.

Here, the Complaint alleges that the work performed by DDG on the Project "was not done in a good and workmanlike manner and [OHG] incurred damages in having to correct DDG's deficient work."[41] Specifically, the Complaint named the following problems associated with the design and construction of the Project:

> One of the two fresh air makeup units was not installed;
> roof drains not tied into storm drainage;
> failed to install conduit in parking areas to allow for electrical wiring to light poles;
> failed to properly design and install irrigation lines under the parking lot to service landscape areas around the building;
> failed to properly design and install commercial washing machine pad to accommodate volume of water discharged by the washing machines;
> failed to design and install the elevator shaft in accordance with structural requirements;
> failed to properly design and install the structure and interior spaces;
> failed to fill structural steel columns with concrete;
> failed to design and install the structure to required two-hour fire rating;
> failed to properly construct and waterproof the elevator pit;
> failed to properly install the roof access hatch;
> failed to properly design and install dryer lint trap;
> failed to design and install electrical work in compliance with applicable code sections;
> failed to design and install mechanical work in compliance with applicable code sections;
> defectively designed and constructed the exterior EFIS cladding;
> failed to properly design exterior window bracing and framing;
> failed to properly design and construct truss system;
> failed to properly design and install the foundation system and failed to design and install adequate blocking to support floating vanities.[42]

The Complaint also alleged that OHG "experienced loss of use of the Project, delay in completion of the Project, water intrusion and infiltration into and through the Project's envelope, elevated moisture levels in the interior spaces of the Project, *physical injury to tangible property caused by*

---

[41] [Doc. No. 132, p. 4]
[42] [Doc. No. 132, pp. 5–6, 16]

*a leaking HVAC system*, and other damages[,]" and OHG "will continue to experience damages to its facilities and improvements[.]"[43]

The Damage to Property and Damage to Your Product Exclusions exclude the specifically named problems[44] associated with the Project. However, the Complaint nonetheless discloses the possibility of coverage. Allegations such as "physical injury to tangible property caused by a leaking HVAC system" as well as allegations that OHG "will continue to experience damages to its facilities and improvements"[45] are express allegations of distinct property damage separate and apart from the work performed by DDG. Accordingly, the Court finds that the Damage to Property Exclusions do not negate Admiral's duty to defend because the Complaint contains allegations aside from the repair or replacement of DDG's faulty product or work.

### iii.    Damage to Impaired Property or Property Not Physically Injured Exclusion

The Policies contain Damage to Impaired Property or Property not Physically Injured Exclusions which state:

> This insurance does not apply to: …
>
> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising

---

[43] [Doc. No. 132, p. 6] (emphasis added)
[44] *See supra* note 42.
[45] [Doc. No. 132, p. 6] (emphasis added)

out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.[46]

The Policies define "impaired property" as follows:

> **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
>> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>>
>> **b.** You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

In *Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.*, the court examined an identical provision in a CGL. The court found the provision to be "clear and unambiguous" and noted that it "precludes coverage from damage to property that has not been physically injured or for which only loss of use is sought." 2007-0251 (La. App. 4 Cir. 10/10/07), 969 So. 2d 653, 663–64, *citing N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 2005-0081 (La. App. 1 Cir. 8/23/06), 943 So. 2d 429, *writ denied*, 2006-2918 (La. 2/16/07), 949 So. 2d 423, and *writ denied*, 2006-2803 (La. 2/16/07), 949 So. 2d 424; *PCS Nitrogen Fertilizer, L.P. v. U.S. Filter/Arrowhead, Inc.*, 2001-2577 (La. App. 1 Cir. 11/8/02), 834 So. 2d 456, 459. The court also noted that the exclusion "does not apply where there is physical damage to property other than the insured's work or product after the product has been put to its intended use." *Id.* (*citing Gaylord Chem. Corp. v. ProPump, Inc.*, 1998-2367 (La. App. 1 Cir. 2/18/00), 753 So. 2d 349, 355).

---

[46] *Supra* note 24.

Here, the Complaint lists numerous items that were inadequately constructed or designed by DDG.[47] The Damage to Impaired Property or Property Not Physically Injured Exclusions clearly and unambiguously exclude liability for loss of use attendant to the repair of property constructed or designed by DDG or its contractors. However, as explained above, allegations such as "physical injury to tangible property caused by a leaking HVAC system" as well as allegations that OHG "will continue to experience damages to its facilities and improvements"[48] are express allegations of distinct property damage separate and apart from the work performed by DDG. Accordingly, the Court finds that the Damage to Impaired Property or Property Not Physically Injured Exclusions do not negate Admiral's duty to defend because the Complaint contains allegations aside from the repair or replacement of DDG's faulty product or work.[49]

The Pre-existing Damage, Damage to Property, Damage to Your Product, and Damage to Impaired Property or Property Not Physically Injured Exclusions do not unambiguously exclude coverage as applied to the allegations in the Complaint. Therefore, the Court finds that Admiral violated its duty to defend DDG and that First Mercury is entitled to reimbursement from Admiral for its pro rata share of attorneys' fees and costs that First Mercury paid to defend DDG.

### III.  CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Motion for Summary Judgment on the Crossclaim Against Admiral Insurance Company [Doc. No. 237] filed by First Mercury is **GRANTED**.

---

[47] *See supra* note 38.
[48] [Doc. No. 132, p. 6] (emphasis added)
[49] *See Banner Prop. Mgmt. Co.*, WL 6448840, at 2, 7–8 (where the court found that the insurer did not carry its burden of proving that coverage was unambiguously excluded for all of the plaintiff's asserted claims because the complaint contained allegations of damage to other property such as "[d]iscoloration and damage to the master bathroom sink as a result of water leakage" and "[d]amage to cabinets and flooring of the rear bathroom due to water leakage[.]").

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment [Doc. No. 240] filed by Admiral is **DENIED**.

**IT IS FURTHER ORDERED** that First Mercury's request for attorneys' fees is **GRANTED**. First Mercury shall file a motion for request for attorneys' fees and costs on or before March 2, 2023.

MONROE, LOUISIANA, this 2nd day of February, 2023.

Terry A. Doughty
United States District Judge